# Wytheville.

## KING v. KING.

### July 20th, 1893.

TENDER—*Presumption of payment.*—In 1862, a borrower executed bond and trust deed securing the loan to be repaid on or before April, 1864. The loan was in Confederate and such other paper and State currency as was then in circulation. In April, 1862, borrower tendered through his wife the money in Confederate notes to pay the bond. The tender was refused. On bill to enjoin sale under the trust deed in 1889,

HELD :

> There was a valid tender in 1863, and by lapse of time a presumption of payment had arisen.

Appeal from decree of circuit court of Wythe county, rendered September 26, 1891, in a chancery cause wherein J. J. King was complainant and John King was defendant. The decree being adverse to the complainant, he appealed. Opinion states the case.

*Robert Crockett*, for appellant.

*Walker & Caldwell*, for appellee.

LACY, J., delivered the opinion of the court.

The case is briefly as follows:

In March, 1862, J. J. King, the appellant, borrowed from the appellee $500, and on the 31st of March executed his bond therefor for the said sum of $500, due one day after date, and

on the same day executed a deed in trust, whereby he con-
veyed his tract of land to secure the payment thereof to the
said John King, the appellee, on or before the 1st day of April,
1864.

On April 1, 1864, in pursuance of the agreement of the par-
ties in the bond and trust deed, the appellant raised $570 and
sent it to his wife, he being absent from home in the army,
and to his father-in-law, to be paid to the appellee in pursuance
of his obligation so to do.    This money was offered to the ap-
pellee, and he would not take it in discharge of his debt,
unless his creditor would receive it from him.    And after three
tenders of the money, he finally refused to receive it.

The money borrowed was, in part, of what is known as Con-
federate treasury notes, and in other part, of such paper money,
State money, &c., such as was circulating at that period, and
the money tendered was what is known as Confederate treas-
ury notes, the only money then in circulation in the country
where both parties lived.

The war having ended, and the appellant having returned
to his home, lived from that time until 1889, then within one
mile of John King, and saw him many times, and the matter
was never mentioned to him, and he considered that the mat-
ter was settled by the tender which he had made, and that
John King had no further claim against him.    But in 1889 the
trustee in the deed having died, another was substituted, and
on the 7th of December, 1889, his land was advertised for sale
to pay this debt.

He brought his suit and enjoined the sale, but subsequently
the circuit court dissolved the injunction, and decreed that his
land should be sold unless within sixty days this debt was paid.
From this decree the appellant applied for and obtained an
appeal to this court.

It appears that the court scaled the debt in question as of
the date of March, 1862, ascertaining it to be $371 of princi-
pal of that date with interest for more than twenty-seven years.

The appellant set up the presumption of payment and the *laches* of the creditor, and relied on his tender. And that if due at all the scale should be by the law applied as of the date when the debt was due and demandable under the *trust deed.* The bond was absolutely barred. But although the action at the promise is barred, the lien exists, and may be enforced, not affected by any period short of that which raises the presumption of payment, which is twenty years; and this doctrine applies, says Mr. Minor (2d vol., 374), not only to deeds of trust and mortgages, but to the vendor's lien, and in general to all specific liens on property.

But in this case there was a valid tender; the actual money was not exhibited, but was in hand, and the counting down of the money was waived by the refusal of the creditor to receive it.

The debtor is not bound to count out the money if he has it and offers it. The tender was in such money as was borrowed, and such money as was called for impliedly by the contract, and was good. There was never afterwards any demand for this money; it was refused, and the matter ended there until by the lapse of time the presumption of payment arises. The appellant, the debtor, was always ready to perform his engagement according to the nature of it, and did perform it so far as he was able, the other party refusing to receive the money. Pars. Contr. 2 vol., 771, 776.

The contract or undertaking in this case was to pay so much money of a certain kind at a certain time. In compliance with this agreement, the debtor made a valid tender, in full compliance with his contract, and he was not able to completely perform it by the refusal of the creditor to receive it. As we have said, the long lapse of time raises a presumption of payment. But under the circumstances of this case, and the change of circumstances which is involved by the act of the creditor, it is rendered impossible for the debtor to perform on his part according to the terms of his contract; and it would

be inequitable to permit the creditor to set up and enforce another and different contract to the injury of his debtor, who has never been in default.

The circuit court should have perpetually enjoined the defendant from selling under the trust deed, and its action in enforcing the lien, and decreeing the sale of the land, was erroneous, and will be reversed and annulled.

DECREE REVERSED.